UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

SKYLAR WAMSLEY,                          )
                                         )
          *Plaintiff,*                   )
                                         )        No. 4:24-cv-76
v.                                       )
                                         )        District Judge Curtis L. Collier
BEDFORD COUNTY,                          )        Magistrate Judge Christopher H. Steger
                                         )
          *Defendant.*                   )

## M E M O R A N D U M

Before the Court is a motion for summary judgment by Defendant Bedford County.  (Doc. 23.)  Plaintiff has responded (Doc. 27), and Defendant has replied (Doc. 29).

## I.     BACKGROUND[1]

Plaintiff was hired by the Bedford County Juvenile Detention Center ("JDC") on April 10, 2023.  (Doc. 28 at 1.)  During the hiring process, Plaintiff informed JDC Director Kellee Smith that he was a member of the National Guard and, as such, would have to take time away for Guard duty and drills.  (*Id.* at 2; Doc. 27-3 at 30.)  This consisted of both weekend training periods and two-week long training periods.  (Doc. 27-3 at 30.)  Plaintiff provided Ms. Smith with a screenshot of his schedule, including the dates on which he would have to take leave.   (Doc. 28 at 1.; Doc. 27-2.)  Ms. Smith informed Plaintiff that Bedford County would work with his National Guard schedule.  (Doc. 27-3 at 27.)  For the first ninety days of his employment, he was a probationary employee, which meant Ms. Smith had the right to terminate him without disciplinary action or

---

[1] Factual disputes and reasonable inferences regarding the underlying facts are presented in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

coaching sessions. (Doc. 28 at 2.) While he was employed, Plaintiff took leave to attend National Guard training in May of 2023. (Doc. 23-1 at 1.)

One of Plaintiff's two-week training periods began on June 15, 2023. (Doc. 27-2 at 1.) Ms. Smith was made aware that Plaintiff would be away at National Guard training for those two weeks. (Doc. 27-3 at 31.) The next day, on June 16, 2023, Ms. Smith sent an email to Human Resources ("HR") representative Shanna Boyette, stating that "[her] last hire, Skylar Wamsley, isn't going to work out," and asking to keep his job posting up "until [she] can work out his release from work." (Doc. 27-4 at 2.) Plaintiff was not terminated at this point.

On June 29, 2023, while on training leave, Plaintiff texted Ms. Smith to inform her that he fell six feet onto his back and was rushed to the emergency room during his training. (Doc. 27-6 at 2.) He told her he had been released from training for the past three days and had physical therapy scheduled for one-and-a-half weeks later. (*Id.*) Ms. Smith told Plaintiff that she would notify HR and told him to touch base with her in a few days. (*Id.* at 3.) On July 4, 2023, Ms. Smith informed Plaintiff that Bedford County would need a doctor's note clearing him before he came back to work. (*Id.* at 4.) Plaintiff responded that he had an upcoming follow-up appointment, then he asked if he would get paid while he was out. (*Id.* at 4–5.) Ms. Smith responded that he would not get paid because he did not have any leave built up. (*Id.* at 5.)

On July 7, 2023, Ms. Smith informed Plaintiff that his services were no longer needed and she would be sending him a separation notice. (*Id.* at 5.) Months later, on December 3, 2024, Ms. Smith sent an email to Ms. Boyette after the lawsuit was filed stating Plaintiff "didn't ever return to work after 6.14.24," and he "never returned to work after his national guard week and went 21 days without working at all here." (Doc. 27-11 at 2.) Plaintiff now brings claims alleging

2

discrimination, retaliation, and failure to reemploy under §§ 4311 and 4312 of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C.S. §§ 4301–4334 (Doc. 20 at 3–5).

## II.     <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing whether summary judgment is warranted, courts must "draw all reasonable inferences in favor of the nonmoving party." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 316 (6th Cir. 2014). In doing so, the court should consider "the plethora of material available in the record to determine whether the moving party 'is entitled to judgment as a matter of law,'" including "pleadings, depositions, answers to interrogatories, written admissions, transcripts of evidence, and written stipulations of fact." *Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024) (quoting Fed. R. Civ. P. 56(c)).

The court should consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of

3

demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

### III. <u>DISCUSSION</u>

"[T]he USERRA prohibits discrimination against persons because of their service in the reserve components of the uniformed services, including the National Guard." *Lam v. City of Cleveland*, 338 F. Supp. 3d 662, 664 (N.D. Ohio 2018). USERRA was enacted to "clarify, simplify, and where necessary, strengthen the existing veterans' employment and reemployment rights provisions." H.R. Rep. No. 65, 103d Cong., 2d Sess. 18 (1994). Plaintiff brings claims for retaliation and discrimination based on his military status under § 4311 and asserts that there was a failure to re-employ Plaintiff after leave under § 4312 (Doc. 20 at 11). The Court will address each argument in turn.

#### A. Section 4311

Section 4311 of USERRA prohibits both discrimination on the basis of military service and retaliation against those who enforce their rights under USERRA. *See* 38 U.S.C. § 4311(c)(1–2). USERRA was enacted in 1994 after the Supreme Court's decision in *Monroe v. Standard Oil Co.,* 452 U.S. 549 (1981), which held that a violation of USERRA's predecessor, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, occurred only when the discharge and demotion was "motivated solely by reserve status." *Id.* at 559. Congress amended USERRA to make clear that military status need not be the sole factor behind discrimination, but rather, a motivating factor. *See* 38 U.S.C. § 4311(c)(1).

> An employer discriminates in violation of USERRA when
>
> the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in

4

the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

*Id.* An employer retaliates under USERRA when

the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

38 U.S.C § 4311(c)(2).

Section 4311 retaliation and discrimination claims are treated interchangeably. *See Savage v. Fed. Express Corp.,* 856 F.3d 440, 447 (6th Cir. 2017) (applying the same test to the plaintiff's § 4311 discrimination and retaliation claims and treating the analysis as one); *see also Maya v. Leprino Foods Co.*, No. 1:12-cv-1479 AWI GSA, 2014 U.S. Dist. LEXIS 35651, at *48 (E.D. Cal. Mar. 17, 2014) (finding that "the distinction between discrimination and retaliation appears to be blurred in the USERRA context" and that "the analyses of discrimination and retaliation in this case are joined into one"). Furthermore, Plaintiff's retaliation claim is based on identical conduct as the discrimination claim. (Doc. 20 at 5–8.) Therefore, the Court will analyze Plaintiff's discrimination and retaliation claims as one.

Courts use a burden-shifting framework to analyze USERRA claims under § 4311. *See Grosjean v. FirstEnergy*, 481 F. Supp. 2d 878, 882 (N.D. Ohio 2007). A plaintiff must first make a prima facie case of discrimination. This requires the plaintiff to "demonstrate only that his or her military service was a motivating factor in an adverse employment action." *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009). "Protected status is a motivating factor if a truthful

5

employer would list it, if asked, as one of the reasons for its decision." *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1026 (6th Cir. 2010). A discriminatory motive may be inferred from a variety of factors. These include:

> proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Hance*, 571 F.3d at 518 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)). Once a plaintiff has met this initial burden, the "the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Id.* (quoting *Sheehan,* 240 F.3d at 1013).

First, the Court must determine whether Plaintiff has raised a prime facie case of discrimination or retaliation. Plaintiff's claim relies on temporal proximity and expressed hostility.[2] Plaintiff argues "[t]he email raising the issue of Mr. Wamsley's termination was sent the very day his two-week leave began," and "[s]uch near-simultaneous timing would permit a reasonable factfinder to infer retaliatory or discriminatory motive." (Doc. 28 at 9.) Plaintiff also offers a general "frustration" with his military leave as evidence for discrimination. (*Id.* at 9–10.)

---

[2] Plaintiff also argues that "the record contains numerous inconsistencies regarding the circumstances of Mr. Wamsley's termination, and the employer's expectations regarding his return to work." (Doc. 28 at 12.) But Plaintiff does not reference any specific inconsistencies; rather, Plaintiff just refers broadly to sections V and VII of his memorandum, which include the factual background and argument for a prima facie case of discrimination. Therefore, the Court does not find any evidence for inconsistent or shifting explanations.

6

The Court of Appeals for the Sixth Circuit has held that "temporal proximity alone may be sufficient" to establish discrimination or retaliation in a § 4311 USERRA suit. *Savage*, 856 F.3d at 448 ("In some cases, temporal proximity alone may be sufficient."). While the Court of Appeals has not set a floor or ceiling for when temporal proximity alone is sufficient, the Court of Appeals has found that twenty-five days, two weeks, thirty-three days, and forty-one days between the protected activity and the adverse employment action have, in certain cases, been enough to "constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Id.* (quoting *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008)[3]; also citing *Bobo v. United Parcel Serv., Inc.,* 665 F.3d 741, 756 (6th Cir 2012); *Hance*, 571 F.3d at 518). "The key inquiry in evaluating temporal proximity is whether the relationship between the protected activity and subsequent adverse action raises the inference of retaliation or discriminatory motivation." *Id.*

While temporal proximity alone can sometimes be enough, this does not mean that temporal proximity alone will always be enough to infer a prima facie case of discrimination or retaliation. For example, this is not the case when the employer "proceed[s] along lines previously contemplated." *Montell*, 757 F.3d at 507 (alteration in original) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). This is to avoid claims relying solely on temporal proximity that involve "employees who see the proverbial writing on the wall that they are about to be fired"

---

[3] While *Mickey* and other cases are not USERRA cases, the Court of Appeals has found that "establishing temporal proximity in a USERRA claim follows the same legal standards as in other retaliation cases." *Savage v. Fed. Express. Co.*, 856 F.3d 440, 448 (6th Cir. 2017). And in deciding what kind of evidence establishes discrimination, the Court of Appeals has analogized to non-USERRA cases. *See id.* (analogizing to the Age Discrimination in Employment Act). Therefore, this Court also finds non-USERRA cases to be illustrative in performing its analysis of temporal proximity.

7

who "use Title VII protections to insulate themselves from adverse employment actions that were previously contemplated." *Id.* (citing *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 358 (2013)). Temporal proximity also may not be enough where the decision-maker does not have knowledge of the protected activity. *Escher*, 627 F.3d at 1026 (6th Cir. 2010).

Here, the close temporal proximity between the protected activity and Plaintiff's termination raises a genuine issue of material fact as to whether his military status was a motivating factor in the termination. Ms. Smith testified she knew Plaintiff would be at his two-week training camp from June 16, 2023, through June 30, 2023. (Doc. 27-3 at 30.) Ms. Smith did not fire Plaintiff the day his leave began; rather, Defendant fired Plaintiff thirteen days after reporting his injury at military training. (Doc. 23-8 at 15.) The Court of Appeals has found periods of time far longer than thirteen days to be adequate for temporal proximity alone to show discrimination. *See, Savage*, 856 F.3d at 448 (collecting cases). Furthermore, "the email raising the issue of Mr. Wamsley's termination was sent the very day his two-week leave began." (Doc. 28 at 9; Doc, 27-3 at 31.) If the Court takes the decision to terminate Plaintiff to be the adverse action[4], a period of one day between the protected activity and the adverse action is about as short of a period of time as possible such that a jury could find discrimination based on temporal proximity alone.

Defendant argues that temporal proximity is not relevant in this case because the training obligations—protected activity associated with military service—occurred regularly, and Defendant had a ninety-day probationary period. (Doc. 29 at 7.) This means that "Bedford County

---

[4] While USERRA does not provide a definition of an "adverse employment action," *Grosjean*, 481 F. Supp. 2d at 885, the Court assumes without deciding that both making the decision to terminate Plaintiff on June 16, 2023, and actually terminating Plaintiff on July 9, 2023, are adverse employment actions.

needed to make a decision regarding his employment prior to July 9, 2023," when Plaintiff's probationary period expired, and therefore, "virtually any employment action will appear close in time, regardless of motive." (Doc. 29 at 7.)

Defendant is correct that any adverse employment action within the ninety-day probationary window would appear close in time to protected activity due to the nature of Plaintiff's military leave. But within that ninety-day time period, certain shorter periods may be enough to raise the inference of discrimination. Here, the one-day lapse of time between his military leave and his termination and the thirteen-day lapse of time between communicating with Ms. Smith about his injury and his termination are both close periods of time within that ninety-day period such that there is a genuine issue of material fact as to what motivated his termination.

In addition, temporal proximity combined with other factors may establish a prima facie case of discrimination or retaliation. *See Hance*, 571 F.3d at 518 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)). Here, Plaintiff argues that there was also anti-military hostility at Bedford County. (Doc. 27-11 at 2.) An employer's expressed hostility towards military members combined with knowledge of plaintiff's protected status may also establish a prima facie case of discrimination. *Id*. Commentary toward the military need not be directly hostile; courts have held that commentary that a plaintiff took "too much time off for the military" is enough to demonstrate anti-military hostility. *Id.* Plaintiff argues that Ms. Smith's December 3, 2024, email saying that Mr. Wamsley did not return to work after one week of training (Doc. 27-11 at 2) "reflects precisely the type of frustration with military-related unavailability that USERRA forbids employers from considering when making employment decisions." (Doc. 28 at 10.) The email contains a statement that Mr. Wamsley did not return to work and references that

9

he is attending military training. (Doc. 27-11) ("He never returned to work after his national guard week and went 21 days without working at all with us here.")  Taken in the light most favorable to Plaintiff, the fact that this twenty-one-day period refers to some time when Plaintiff was away at military training, along with the tone of the email, could support a discrimination claim.

Plaintiff has presented enough evidence to present a *prima facie* case of discrimination, and Defendants have not carried their burden to show there is no genuine dispute of material fact on this issue.  Therefore, the Court will now address whether Defendants have provided evidence that establishes, as a matter of law, there was a legitimate, nondiscriminatory motive for Plaintiff's termination.

Defendant asserts that it "was going to and did terminate Mr. Wamsley for legitimate reasons independent of his absence from work." (Doc. 24 at 13.)  It argues that he was terminated "based on his workplace conduct and temperament," which included threatening detainees, eating detainees' food, and visiting his girlfriend during shifts.  (*Id.*)   Defendant stated that there were written complaints filed by juvenile detainees and provided the Court with those grievances.  (*Id.*; Doc. 23-5).  The grievances alleged Plaintiff threatened two detainees with mace and threatened one with lockdown.  (Doc. 23-5 at 1, 3.)

Plaintiff argues that these statements should not be considered because they appeared in a declaration by Ms. Smith, and the statements in that declaration violate the Court of Appeals's "sham-affidavit" rule. (Doc. 28 at 4.)  This rule deals with the admissibility of post-deposition affidavits at the summary judgment stages where those affidavits attempt to create a sham issue of material fact. It provides that "a party cannot create a genuine dispute of material fact with an affidavit that conflicts with the party's earlier testimony about the fact." *Boykin v. Family Dollar*

*Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021). The Court of Appeals holds that "[a] directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction," but if "there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Aerel, S.R.L. v. PCC Airfoils, L.L.C.* 448 F.3d 899, 908 (6th Cir. 2006).

This argument is inapposite. The sham-affidavit rule prevents parties from using sham affidavits to create factual disputes. But here, Defendant is the moving party and is asserting there is no genuine dispute of material fact. Therefore, Defendant's use of the affidavit is not an attempt to create a sham fact issue. In fact, it is doing the opposite – it is trying to show that there is no fact issue. And furthermore, none of the contested statements directly contradict the answers given in Ms. Smith's deposition, which would be required even if this were in the correct posture to put the sham affidavit rule at issue. Therefore, the sham-affidavit rule does not preclude consideration of Ms. Smith's deposition.

Defendant has not shown there is no genuine dispute of material fact as to whether he was fired for a legitimate reason. Plaintiff denies in his deposition that his girlfriend appeared at his workplace while he was at work, stating that he "can almost say with 100% certainty she did not come." (Doc. 27-1 at 4.) And he also denies eating the detainees' food. (*Id.* at 4–5.) Fact issues thus remain regarding whether two of the three proffered reasons even occurred. That leaves the threats. Defendant admits that if there was a disciplinary issue among the detainees, he may have given the appearance that he was going to use mace on them, even though he states he does not recall any interactions where he threatened to use mace against anyone. (Doc. 23-8 at 6.) But it

11

is unclear whether Defendant would have terminated Plaintiff anyway solely because of the threats. Indeed, Defendant's explanation for its termination was a combination of reasons that included eating the detainees' food, entertaining visits from his girlfriend, and the threats that led Defendant to believe he did not have an appropriate temperament to work with juveniles. (Doc. 23-1 at ¶ 4.) But there is a genuine dispute of fact as to whether at least two of these reasons occurred. Therefore, Defendant has not met its burden to show, as a matter of law, by a preponderance of the evidence, that it would have fired Plaintiff for a legitimate, non-discriminatory reason. *Hance*, 571 F.3d at 518. Therefore, the Court will deny Defendant's motion for summary judgment on Plaintiff's § 4311 claims.

### B.     Section 4312

Plaintiff also asserts a claim for reemployment rights under § 4312. Under § 4312, "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter" if the person or officer (1) "has given advance written or verbal notice of such service" to the employer, (2) the cumulative length of the absence and all previous absences does not exceed five years, (3) the person reports to their employer or submits an application for reemployment within the appropriate notification dates outlined in subsection (e), and (4) the separation from service was under honorable conditions. 38 U.S.C. §§ 4312(a), 4304(2); *see also Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 440 (6th Cir. 2008). If a person is either hospitalized for or convalescing from a service injury, they should report to their employer or submit an application "at the end of the period that is necessary for the person to recover from such illness or injury." 38 U.S.C. § 4312(e)(2)(A).

12

There has been some confusion about whether § 4312 is a subsection of § 4311, and whether plaintiffs must show that discrimination was the reason they were not re-employed. The Court of Appeals has said that "a person seeking relief under § 4312 must also meet the discrimination requirement contained in § 4311." *Curby v. Archon*, 216 F.3d 549, 557 (6th Cir. 2000). But the Court of Appeals later described this language as dicta in *Petty*. 538 F.3d at 442 (citing *Wrigglesworth v. Brumbaugh*, 121 F. Supp. 2d 1126, 1137 (W.D. Mich. 2000) ("[T]his language from *Curby* was merely dicta and is therefore not binding precedent.)). Recognizing this divide post-*Curby*, the Court of Appeals in *Petty* adopted the reasoning of the Eighth Circuit in *Clegg v. Arkansas Department of Corrections*, 496 F.3d 922, 930 (8th Cir. 2008). There, the Eighth Circuit found that § 4312 does not require a showing of discrimination, but rather "protects service members at the instant of seeking reemployment," in contrast with § 4311. *Id.* (citing *Francis v. Booz, Allen, & Hamilton*, 452 F.3d 299, 304 (4th Cir. 2006) (finding that § 4312 is a separate requirement from § 4311)). "The imposition of § 4311's discrimination requirement on a reemployment claim is not consistent with the plain language of §§ 4312 and 4313." *Petty*, 538 F.3d at 443.

Defendant argues out of the four prerequisites of § 4312, the third element, reporting back to work or submitting an application for reemployment, is at issue here. (Doc. 24 at 15.) Defendant's position is that Plaintiff never reported back to work following his military leave and thus, was not entitled to re-employment. A person whose period of service was less than thirty-one days must report back to their employer—

> not later than the beginning of the first full regularly scheduled work period on the first full calendar day following the completion of the period of service and the expiration of eight hours after a period allowing for the safe transportation of the person from the place of that service to the person's residence.

13

38 U.S.C. § 4312(e)(1)(A)(i).  Defendant argues Plaintiff failed to return to work (Doc. 24 at 15–16), while Plaintiff argues that the time period by which he must have returned to work was tolled because of his injury. (Doc. 27 at 11.)  Defendant argues Plaintiff has not shown he was injured, and that Plaintiff "bears the burden of producing evidence showing that an injury occurred and that a recovery period was reasonably necessary." (Doc. 29 at 8.)

Under USERRA, a person who is "hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services shall, at the end of the period that is necessary for the person to recover from such illness or injury, report to the person's employer."  38 U.S.C. § 4312(e)(2)(A).  Nothing in this statute suggests that Plaintiff must produce documentation of the injury or of the reasonably required recovery period to the employer, and Defendant has not provided the Court with any case law that suggests what kind of documentation would be required.

As to evidence provided to the Court, Plaintiff has provided documentation of this injury. He has provided the Court with his communication with his supervisor about his injury.  (Doc. 27-6 at 3–4.)  He has provided deposition testimony that describes the details of his injury and medical treatment.  (Doc. 27-1 at 6–7.)   Defendant argues "Mr. Wamsley relies on images of medical records" which were never seen before in discovery and therefore violate Plaintiff's disclosure and supplementation obligations under Federal Rules of Civil Procedure 26 and 37.  (Doc. 29 at 3.) But the Court need not address this issue because Plaintiff's deposition states that he was injured, describes the circumstances of his injury, describes the treatment he received at the hospital, and describes his condition after the injury. (Doc. 27-1 at 6–7.)   Plaintiff's deposition stating that he

14

was injured is enough to create a genuine dispute of material fact as to whether he was, in fact, injured such that the convalescence period would be triggered. This is because "deposition testimony will assist a plaintiff in surviving a motion for summary judgment, even if the deposition itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact." *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Hernandez v. Results Staffing, Inc.*, 677 F. App'x 902, 907 (5th Cir. 2017) (finding that, in a USERRA case, testimony of the plaintiff, the plaintiff's wife, and a physician's note offered at trial were sufficient evidence of the required convalescence period).

Furthermore, Plaintiff provided photographs of himself in the hospital, alongside a declaration of his mother stating that she took those photographs. (Docs. 27-7, 27-8.) Defendant argues that these photographs are not sufficiently authenticated because the declaration "does not include any facts regarding where the photographs were taken or what they depict." (Doc. 29 at 5.) Taking all inferences in the light most favorable to Plaintiff, he has presented facts sufficient to support the finding that these photographs are authentic. It does not appear that Defendant disputes that it is, in fact, Plaintiff pictured in these photos. (Doc. 33 at 1 (describing "photographs showing the Plaintiff in the hospital").) The photographs depict Plaintiff in the hospital, convalescing. And his mother's declaration shows that she took those pictures and describes the date the photos were posted (Doc. 27-8 ¶ 3), which was close in time to his purported injury from training. Taken in the light most favorable to Plaintiff, there is evidence sufficient to support a finding that these photographs are evidence of Plaintiff's training injury. *See Fed. R. Evid.* 901(a).

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that his duty to report back to work was tolled under § 4312(e)(2)(A). Defendant has not met its

summary judgment burden to show that it is entitled to judgment as a matter of law on the tolling period. *See Celotex Co. v. Catrett*, 477 U.S. 317, 325 (1986). Therefore, the Court finds there is a genuine issue of material fact as to whether Defendant failed to re-employ Plaintiff in violation of § 4312.

## IV.     CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's motion for summary judgment.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

16