UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| SKYLAR WAMSLEY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 4:24-cv-76 |
| v. | ) | |
| | ) | District Judge Curtis L. Collier |
| BEDFORD COUNTY, | ) | Magistrate Judge Christopher H. Steger |
| | ) | |
| *Defendant.* | ) | |

## <u>M E M O R A N D U M</u>

Before the Court are four motions in limine by Defendant Bedford County. The first is a motion in limine to exclude from evidence photographs showing Plaintiff in the hospital (Doc. 27-7) under Federal Rules of Evidence 401, 402, and 403. (Doc. 33.) The second is a motion in limine to exclude from evidence medical records or photographs of medical records (Doc. 27-9) under Federal Rule of Civil Procedure 37 and Federal Rule of Evidence 802. (Doc. 34.) The third is a motion in limine to exclude lay testimony regarding Plaintiff's injury. (Doc. 35.) And the fourth is a motion to exclude evidence of four of Bedford County's prior termination decisions. (Doc. 36.) Plaintiff has responded to all four motions (Docs. 43–46) and Defendant has replied (Docs. 50–53).

## I. <u>BACKGROUND</u>

Plaintiff has brought claims alleging discrimination, retaliation, and failure to reemploy under §§ 4311 and 4312 of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C.S. §§ 4301–4334. (Doc. 20 at 3–5.) Plaintiff alleges his termination from that position was motivated in part by his military status. (*Id*.)

Plaintiff was hired by the Bedford County Juvenile Detention Center ("JDC") on April 10, 2023. (Doc. 28 at 1.) During the hiring process, Plaintiff informed JDC Director Kellee Smith that he was a member of the National Guard and, as such, would have to take time away for Guard duty and drills. (*Id.* at 2; Doc. 27-3 at 30.) This consisted of both weekend training periods and two-week-long training periods. (Doc. 27-3 at 30.) Plaintiff provided Ms. Smith with a screenshot of his schedule, including the dates on which he would have to take leave. (Doc. 28 at 1; Doc. 27-2.) Ms. Smith informed Plaintiff that Bedford County would work with his National Guard schedule. (Doc. 27-3 at 27.) For the first ninety days of his employment, he was a probationary employee, which meant Ms. Smith had the right to terminate him without disciplinary action or coaching sessions. (Doc. 28 at 2.)

One of Plaintiff's two-week training periods began on June 15, 2023. (Doc. 27-2 at 1.) The next day, on June 16, 2023, Ms. Smith sent an email to Human Resources ("HR") representative Shanna Boyette, stating that "[her] last hire, Skylar Wamsley, isn't going to work out," and asking to keep his job posting up "until [she] can work out his release from work." (Doc. 27-4 at 2.) Plaintiff was not terminated at this point.

On June 29, 2023, while on training leave, Plaintiff texted Ms. Smith to inform her that he fell six feet onto his back and was rushed to the emergency room during his training. (Doc. 27-6 at 2.) His mother took photographs of Plaintiff at the hospital. (Doc. 27-7.) Plaintiff told Ms. Smith he had been released from training for the past three days and had physical therapy scheduled for one-and-a-half weeks later. (Doc. 27-6 at 2.) Ms. Smith told Plaintiff that she would notify HR and told him to touch base with her in a few days. (*Id.* at 3.) On July 4, 2023, Ms. Smith informed Plaintiff that Bedford County would need a doctor's note clearing him before

he came back to work. (*Id.* at 4.) Plaintiff responded that he had an upcoming follow-up appointment, then he asked if he would get paid while he was out. (*Id.* at 4–5.) Ms. Smith responded that he would not get paid because he did not have any leave built up. (*Id.* at 5.)

On July 7, 2023, Ms. Smith informed Plaintiff that his services were no longer needed and she would be sending him a separation notice. (*Id.* at 5.) Previously, Bedford County had terminated four other employees: Mr. Lynch in 2023 (Doc. 36-2 at 1–2), Ms. Reed (Doc. 36-3 at 1–2), Mr. Hart in 2024 (Doc. 36-5 at 1), and Ms. Draine in 2021 (Doc. 36-6).

This case is set for trial May 11, 2026.

## II.   STANDARD OF REVIEW

A motion in limine is "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "Orders in limine which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). "A better practice is to deal with questions of admissibility of evidence as they arise." *Id.* Courts have power to exclude evidence through a motion in limine only when evidence is "clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Motions in limine "are not proper procedural devices for the wholesale disposition of theories or defenses." *Bell v. Prefix, Inc.*, No. 05-74311, 2009 U.S. Dist. LEXIS 101889 at *3 (E.D. Mich. Nov. 2, 2009). "A court enjoys broad discretion when it decides questions of relevance and possible prejudice." *Clark v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:17-CV-00419-GNS-CHL, 2025 U.S. Dist. LEXIS 259653, at *4 (W.D. Ky. Dec. 16, 2025).

3

## III.   <u>DISCUSSION</u>

### A.      **Defendant's first motion in limine**

Defendant moves to exclude photographs of Plaintiff in the hospital (Doc. 27-7). (Doc. 33.) Defendant argues these photographs are not relevant because they do not show where Plaintiff was, whether he was injured during military service, or that the injury required a recovery period. (Doc. 33 at 2.) Defendant also argues even if these photographs are probative, their probative value is "substantially outweighed by the danger of prejudice to the County and misleading the jury." (*Id.* at 3.) Plaintiff argues the photographs are relevant and testimony at trial would be sufficient to establish additional facts about them. (Doc. 43 at 2.) Plaintiff also argues the danger of unfair prejudice of these photographs does not substantially outweigh their probative value. (*Id.* at 3.) The Court will first address Defendant's relevance objection, then it will address Defendant's unfair prejudice objection.

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The Federal Rules of Evidence set a low bar for relevance." *Cambio Health Sols., LLC v. Reardon*, 234 F. App'x 331, 338 (6th Cir. 2007). "A piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009).

Here, the photographs clear that low bar. They depict Plaintiff in the hospital. And Plaintiff's mother submitted a declaration (Doc. 27-8) stating that Plaintiff is her son, she took the two photographs, they were posted to her Facebook account on June 25, 2023, and they are a true

4

and accurate representation of the photographs she took.  (*Id.* at ¶¶ 1–4.)   To prevail at trial, Plaintiff must prove there was an injury during his National Guard training that triggered the convalescence period to toll his reporting obligation under 38 U.S.C. § 4312(e)(2).  Photographs of Plaintiff, injured, taken immediately after his training could make it more likely that Plaintiff was injured within the meaning of § 4312(e)(2).  Of course, such evidence may not be conclusive; depending on the trial presentation, they may not even be helpful.  But a jury is in the best position to make that determination.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

Defendant also argues that even if relevant, these photographs should be excluded under Federal Rule of Evidence 403.  The Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice" or "misleading the jury." Fed. R. Evid. 403.  Defendant argues "[t]he photographs are inherently ambiguous and could reasonably be perceived as depicting either a person who has suffered a catastrophic spinal injury and is unconscious or paralyzed, or alternatively, a person who is merely resting after a fall without having sustained any significant injury."  (Doc. 33 at 3.)  Plaintiff represents these photographs are "highly probative" because they "go directly to the nature and severity of the injury in question."  (Doc. 43 at 3.)

The probative value of the photographs is not substantially outweighed by the risk of unfair prejudice.  The probative value of these photographs is high.  They contribute to a central, contested issue in this case—whether Plaintiff was injured on his military leave such that his

5

reporting period to return under 38 U.S.C. § 4312(e)(2) was tolled. And the danger of unfair prejudice or misleading the jury is minimal, especially alongside testimony and other evidence about the photographs. These photographs are no more ambiguous than any other photograph of an injury that does not include a medical description in the photograph. And any ambiguity about what the photographs depict—for example, whether they depict "either a person who has suffered a catastrophic spinal injury and is unconscious or paralyzed, or alternatively, a person who is merely resting after a fall without having sustained any significant injury" (Doc. 33 at 3)—can be resolved on cross examination. "Unfavorable evidence is always prejudicial, but not always impermissibly prejudicial, under the rules." *McDonald v. City of Memphis*, No. 2:12-cv-2511, 2016 U.S. Dist. LEXIS 193726, at *14 n.6 (W.D. Tenn. Aug. 26, 2016). A jury may analyze these photographs alongside the testimony and other evidence presented at trial and come to its own conclusions about how much weight to give them or whether they prove what Plaintiff is using them to show. But these photographs do not "invite[] the jury to decide the case on an improper basis, unrelated to the probative value of the evidence." *United States v. Shrock*, 855 F.2d 327, 335 (6th Cir. 1988). Therefore, the Court will **DENY** Defendant's first motion in limine (Doc. 33).

### B. Defendant's second motion in limine

Defendant moves to exclude medical records or photographs of medical records[1] from his alleged military injury under Federal Rule of Civil Procedure 37 and Federal Rules of Evidence

---

[1] Plaintiff attached to his response to Defendant's motion for summary judgment a photograph of the medical records (Doc. 27-9). To the extent that Plaintiff is in possession of the paper copies of the medical records, this ruling applies to both the photographs of the records in that exhibit, any other copies of those exhibits, and the actual records themselves.

6

801 and 802. (Doc. 34.) Because the Court resolves this motion under Federal Rule of Civil Procedure 37, it will not address Defendant's hearsay arguments.

Defendant asserts Plaintiff "untimely produced these photographs for the first time in response to the County's [m]otion for [s]ummary [j]udgment." (Doc. 34 at 2.) Plaintiff had provided a medical records release for Defendant to obtain medical records "relating to the injury [Plaintiff] allege[d] occurred during military training in June 2023." (Doc. 34-2 at 15–16.) That medical release was sent and returned no records, and when Defendant asked if Plaintiff had records in his possession, Plaintiff's counsel replied that he believed Plaintiff did not. (Doc. 34 at 2, Doc. 34-3 at 1.) On March 12, 2026, one day before filing a response to Defendant's motion for summary judgment, Plaintiff's counsel notified Defendant that "on pressing [Plaintiff] further he recalled they put him under a weird pseudonym at the hospital," but that "he was able to find the email he sent to his commanding officers with his records after the injury," but that "a key page on it is blurry, and he does not have the original." (Doc. 34-4 at 1.)

Defendant argues that Plaintiff's "failure to disclose these records was harmful and not substantially justified" because Defendant has been deprived of the opportunity to test, verify, or rebut the information and could not question Plaintiff, pursue further discovery, or question medical providers. (Doc. 34 at 5.) Plaintiff argues that the delay in disclosure was harmless because the records "do not inject a new theory or unexpected category of damages," and Defendant may cross-examine witnesses at trial about this evidence. (Doc. 44 at 4.)

Under Federal Rule of Civil Procedure 26, a party must provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims

7

or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). If a party "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," then the party must "supplement or correct its disclosure or response." *Id.* 26(e)(1).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[H]armlessness . . . is the key under Rule 37, not prejudice." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). The Court of Appeals for the Sixth Circuit has adopted five factors to determine whether an omitted or late disclosure is substantially justified or harmless. *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015). Those factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). The burden is on the "potentially sanctioned party" to demonstrate harmlessness. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010). "District courts have broad discretion in applying these factors and need not apply each one rigidly. The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). Plaintiff acknowledges disclosure of these records

8

was delayed.  (Doc. 44 at 3.)  The Court finds that Plaintiff's failure to disclose these records was not substantially justified and was not harmless.

First, the information was a surprise.  Defendant did not have the medical records in its possession nor the ability to retrieve them without knowledge of the pseudonym under which Plaintiff was admitted, which Plaintiff had knowledge of.  "[T]he advisory committee note to Rule 37 'strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party."  *Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 637 (6th Cir. 2007) (quoting *Vance by & Through Hammons v. United States*, No. 98-5488, 1999 U.S. App. LEXIS 14943, at *16–17 (6th Cir. June 25, 1999))[2].  While Defendant knew of the existence of medical records, it did not know the substance of the information in those records and did not believe they would be available for trial.  *See RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 669 (6th Cir. 2024) (finding surprise to the defendants even when expert witness was identified because the defendants would not have been familiar with the substance of the testimony).  This factor weighs against Plaintiff.

Second and third, the ability of Defendant to cure that surprise and the disruption to the trial.  Courts typically treat these two factors together.  *See, e.g.*, *Caudle v. Nielsen Co. (US), LLC* No. 17-13737, 2020 U.S. Dist. LEXIS 211317, at *7–8 (E.D. Mich. Nov. 12, 2020); *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-cv-150-JMH-REW, 217 U.S. Dist. LEXIS 80288, at *12–13 (E.D. Ky. May 25, 2017).   Because of this late disclosure, Defendant could not question

---

[2] Plaintiff cites *Stanley v. FCA U.S., LLC*, 51 F.4th 215, 221 (6th Cir. 2022) for the proposition that "corrective efforts weigh strongly against a finding of unjustified nondisclosure." (Doc. 44 at 4.)  That is inapposite; it is about corrective action regarding bankruptcy asset disclosure, not disclosure of evidence in a discovery dispute.

Plaintiff about the medical records during his deposition nor pursue any other discovery in response to the existence of these medical records. While Defendant may cross-examine Plaintiff about such evidence at trial, it did not have the opportunity to develop this evidence through depositions or during discovery. And trial is set for May 11, 2026, with the final pretrial conference set for April 30, 2026; any more depositions or a re-opening of discovery would change the trial date, which this Court intends to maintain. "Harm should be assessed based on the realities of the situation, the case status, and the schedule." *EQT Prod.,* 2017 U.S. Dist. LEXIS 80288, at *14. There would not be enough time to cure the defect without pushing back the trial date which would disrupt both parties' preparation and the Court's calendar.

Fourth, the importance of the evidence. "On its own, this factor can cut both ways. 'The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure.'" *Bisig*, 940 F.3d at 220 (quoting *EQT Prod.*, 2017 U.S. Dist. LEXIS 80288, at *5). Some courts have found that greater importance could weigh in favor of sanctions. *See, e.g., Olmstead v. Fentress Cnty.*, No. 2:16-cv-00046, 2019 U.S. Dist. LEXIS 24356, at *18 (M.D. Tenn. Feb. 14, 2019). Here, the evidence is important to develop Plaintiff's case about whether he had an injury within the meaning of 38 U.S.C. § 4312(e) that tolled the reporting period by which he had to report to work. While there may be other possible evidence to that effect, including testimony by Plaintiff and others, the photographs of medical records can establish the convalescence period and the cause of injury. The Court finds this factor is neutral.

Finally, the explanation of the non-disclosing party for the delay. While Plaintiff provided a medical records release, it was ineffectual because Plaintiff was treated under a pseudonym, which made obtaining the records difficult. But Plaintiff asserts he was able to recall that they put

10

him under a pseudonym and was able to find photos of the medical records in his email. (Doc. 29-3.) This information was not provided to Defendant until after the dispositive-motion deadline and until Plaintiff submitted his response to Defendant's motion for summary judgment. Plaintiff's counsel was able to learn from his client that Plaintiff was treated under a pseudonym "upon pressing him further," and then Plaintiff "was able to find the email he sent to his commanding officers with his records after his injury." (Doc. 29-3 at 1.) This information could have been obtained sooner with a search of Plaintiff's email or with further questioning of Plaintiff. Plaintiff also represents that he "produced these documents in connection with summary judgment." (Doc. 44 at 4.) But that fact works against Plaintiff. The fact that this supplement came months after the initial deadline and only in response to Defendant's summary-judgment motion makes Plaintiff's explanation about the difficulty of retrieving these records less salient, and favors a finding against this being substantially justified. *Vance*, 1999 U.S. App. LEXIS 14943, at *15 (finding "the fact that the supplement came five months after the initial deadline and that it came in response to a motion for summary judgment" to "ultimately tip[] the balance in defendant's favor on this issue"). The Court finds this factor favors Defendant.

Four of the five *Howe* factors favor Defendant. Therefore, the Court finds that the photographs of the medical records were disclosed in violation of Rule 26 and the omission was neither harmless nor substantially justified. Therefore, the Court will **GRANT** Defendant's second motion in limine (Doc. 34) and exclude the photographs of the medical records (Doc. 27-9), other photographs of the medical records, and, to the extent the parties have access to the medical records, the medical records themselves.

11

## C. Defendant's third motion in limine

Defendant seeks to exclude lay testimony regarding Plaintiff's injury under Federal Rules of Evidence 702 and 403. Defendant argues "Mr. Wamsley's mother and/or fiancé should not be permitted to testify about (1) what caused Mr. Wamsley's claimed injury, (2) the extent, symptoms, or severity of Mr. Wamsley's claimed injury, or (3) any facts beyond their personal knowledge or that would require specialized knowledge." (Doc. 35 at 1.) Plaintiff argues such testimony is within their personal knowledge and "no medical or other specialized skill set is needed to describe what they observed." (Doc. 45 at 2.)

Under Federal Rule of Evidence 701, lay witness testimony is limited to testimony "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A lay witness also may only testify to a matter if the witness has personal knowledge of that matter. Fed. R. Evid. 602. The Court will first address Defendant's arguments about the symptoms and severity of Plaintiff's injuries and then will address Defendant's arguments regarding causation.

"Lay opinion testimony on a specific medical diagnosis may not be admissible without proper expert support, but lay testimony as to a plaintiff's symptoms generally is." *Williams v. Hamilton Cnty.*, Case No. 1:15-cv-74, 2018 U.S. Dist. LEXIS 55239, at *3–4 (E.D. Tenn. Mar. 31, 2018) (citing *McDonald*, 2016 U.S. Dist. LEXIS 193726, at *5). "Courts have held that lay witnesses can testify regarding injuries they witness, such as bruising." *Hornback v. Czartorski*, No. 3:20-cv-703-RGJ, 2022 U.S. Dist. LEXIS 166699, at *4 (W.D. Ky. Sep. 14, 2022).

12

Here, the Court finds that Plaintiff's mother and fiancée are in a position to observe the character and extent of Plaintiff's injuries they witnessed. Such testimony would not be improper lay opinions. Their testimony would be limited to their observations of Plaintiff in the hospital, his recovery, and the injuries they observed with their own senses. It does not require medical expertise to testify to mere observations of Plaintiff and symptoms Plaintiff may have been experiencing, so long as this testimony does not cross the line into scientific or technical testimony.

As to causation, "[c]ourts have held that, when injuries are of such a character as to require skilled and professional persons to determine the cause and extent of the injuries, the cause of the injuries must be determined by medical testimony." *Jama v. City of Memphis*, No. 03-2965, Ma/P, 2006 U.S. Dist. LEXIS 101675, at *7 (W.D. Tenn. Dec. 29, 2006). However, a lay witness can testify to causation, "if that causation is within a lay person's realm of knowledge," but not "where technical or specialized testimony is necessary, such as where there are multiple possible causes of an injury or where specialized medical issues are involved." *Williams,* 2018 U.S. Dist. LEXIS 55239, at *4.

Similarly to the extent and symptoms of Plaintiff's injury, the Court finds that a general bar on causation testimony is not appropriate in this case. "Lay testimony 'results from a process of reasoning familiar in everyday life,' whereas 'an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.'" *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). Here, the question is whether Plaintiff suffered an injury during military training. It does not appear that the questions in this case require any apportionment of liability, any discussion of complex medical causes, or any testimony more specific than testimony about whether there was an injury during

13

training.  Of course, if more complicated questions of medical diagnosis, treatment, or causation arise during trial that would not be in a lay person's realm of knowledge, Defendant is free to re-raise this objection.  But the Court finds that Plaintiff's mother and fiancée have the requisite personal knowledge from being present at the hospital and observing Plaintiff after his time at the hospital.  Fed. R. Evid. 602. Further, they may testify to their opinions rationally based on their perception of Plaintiff and can testify to general causal connections to the extent these do not cross into medical testimony.  Fed. R. Evid. 701.

Defendant also moves to exclude this evidence under Federal Rule of Evidence 403.  *See supra* IIIA.  Defendant argues that testimony by Plaintiff's fiancée and mother would "invite the jury to credit emotionally charged, non-expert opinions in place of competent medical evidence, creating a substantial risk that the case would be decided on sympathy rather than facts."  (Doc. 35 at 2.)  Plaintiff argues that "testimony from Mr. Wa[]m[s]ley's mother and fiancée[] would not mislead the jury and unfairly prejudice Defendant."  (Doc. 45 at 3.)

The Court agrees with Plaintiff.  The probative value of this evidence is high because it goes to whether Plaintiff was injured within the meaning of 38 U.S.C. § 4312(e)(2), a central issue in this case.  Defendant argues that these witnesses were not present during training, lack expert knowledge, and would be emotionally charged.  But those topics are ripe for cross-examination. Rule 403 does not exist to bar shaky, unhelpful, or unpersuasive evidence; it exists to bar evidence that is substantially and unfairly prejudicial.  And here, the Court does not find that testimony by Plaintiff's fiancée and mother "invite[] the jury to decide the case on an improper basis, unrelated to the probative value of the evidence." *Shrock*, 855 F.2d at 335.  Therefore, the Court will **DENY** Defendant's third motion in limine (Doc. 35).

14

### D. Defendant's fourth motion in limine

Defendant moves to prohibit Plaintiff from introducing "evidence, testimony, or argument that the County's termination decisions involving other employees demonstrate discriminatory intent under [USERRA]." (Doc. 36 at 1.) This motion comes under Federal Rule of Evidence 401. *See supra* IIIA (discussing the standard for Federal Rule of Evidence 401). During discovery, the termination of four former employees arose. Two employes, Mr. Lynch and Ms. Reed, were not within their ninety-day probationary period, whereas two, Ms. Hart and Ms. Draine, were. (Doc. 36 at 2.) Plaintiff "does not oppose exclusion of evidence related to Mr. Lynch and Ms. Reed." (Doc. 46 at 2.)

"A plaintiff may…establish a prima facie case of discrimination or retaliation under USERRA by putting forward evidence of 'disparate treatment of certain employees compared to other employees with similar work records or offenses.'" *Savage v. Fed. Express Corp.*, 856 F.3d 440, 451 (6th Cir. 2017) (quoting *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 754 (6th Cir. 2012)).

> USERRA does not require a plaintiff to identify a similarly situated employee who was treated more favorably to establish a prima facie case, as under the *McDonnell Douglas* framework. The focus of our inquiry in a USERRA claim is whether the plaintiff and 'his proposed comparators engaged in acts of comparable seriousness,' and whether their different treatment gives rise to a reasonable inference of discriminatory motivation.

*Id.* Defendant argues evidence about Mr. Hart and Ms. Draine is irrelevant because "Mr. Hart and Ms. Draine [] were not treated more favorabl[y] or treated differently [despite] acts of comparable seriousness." (Doc. 36 at 2); *see* Fed. R. Evid. 401; *see, supra*, IIIA (discussing the standard for Federal Rule of Evidence 401). Defendant additionally represents

15

> Mr. Hart was late and inexplicably absent from shifts. Ms. Draine provided insufficient notice of her need for relief from a shift and failed to communicate. Mr. Wamsley, on the other hand, was named in detainee grievances, ate detainee's food, visited his girlfriend in the parking lot during work, and exhibited poor judgment and inappropriate behavior.

(Doc 36 at 3.) Several of these allegations involve matters of proof, such as whether Plaintiff actually engaged in the alleged conduct of eating a detainee's food, visiting his girlfriend during work, and exhibiting poor judgment. And the precise comparison between these two individuals and Plaintiff may be more or less probative depending on what the conduct was.

Fact issues remain about whether these two incidents were sufficiently similar to Plaintiff's case. For that reason, the Court will not rule on this motion at this time. *See McDole v. City of Saginaw*, 07-13697-BC, 2009 U.S. Dist. LEXIS 109494, at *18 (E.D. Mich. Nov. 24, 2009) (describing, in an employment discrimination case, the district court's decision to reserve ruling on Defendant's motion in limine "because of disputes about the facts related to the incidents that were necessary to determine whether they were or were not similar to Plaintiff's case."). Therefore, the Court will **RESERVE RULING** on Defendant's motion in limine as to Mr. Hart and Ms. Draine. Because Plaintiff does not oppose exclusion of testimony as to Mr. Lynch and Ms. Reed, the Court will **GRANT** Defendant's motion as to Mr. Lynch and Ms. Reed.

## IV.  CONCLUSION

The Court will **DENY** Defendant's first and third motions in limine (Docs. 33, 35). The Court will **GRANT** Defendant's second motion in limine (Doc. 34). And the Court will **GRANT IN PART** and **RESERVE RULING IN PART** on Defendant's fourth motion in limine (Doc. 36).

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**

17