UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| SKYLAR WAMSLEY, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No. 4:24-cv-76 |
| v. | ) | |
| | ) | District Judge Curtis L. Collier |
| BEDFORD COUNTY, | ) | Magistrate Judge Christopher H. Steger |
| | ) | |
| *Defendant.* | ) | |

## M E M O R A N D U M

Before the Court is a motion in limine by Plaintiff Skylar Wamsley to exclude seven pieces of evidence. (Doc. 30.)  This includes (1) evidence of Plaintiff's prior employment discipline and terminations (*id.* at 1), (2) evidence of sexual-harassment allegations at a job Plaintiff held after being terminated from Bedford County (*id.* at 2), (3) testimony regarding Plaintiff's fiancée's presence at work during his employment at the Tennessee Highway Patrol or during his employment with any other employer (*id.*), (4) testimony regarding reasons Plaintiff gave for missing drill (*id*. at 3), (5) testimony regarding Plaintiff's employment with Allied Universal (*id.*), (6) "anywhere where Plaintiff testified to matters that called for legal conclusions or to make claims about the ultimate issue in the case" (*id.*), and (7) "tax issues and financial irrelevancies" (*id.* at 4).  Defendant has responded (Doc. 32) and Plaintiff has replied (Doc. 39).

## I.     BACKGROUND

Plaintiff has brought claims alleging discrimination, retaliation, and failure to reemploy under §§ 4311 and 4312 of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C.S. §§ 4301–4334. (Doc. 20 at 3–5.)  Plaintiff alleges his termination from that position was motivated in part by his military status.  (*Id.*)

Plaintiff was hired by the Bedford County Juvenile Detention Center ("JDC") on April 10, 2023. (Doc. 28 at 1.) During the hiring process, Plaintiff informed JDC Director Kellee Smith that he was a member of the National Guard and, as such, would have to take time away for Guard duty and drills. (*Id*. at 2; Doc. 27-3 at 30.) This consisted of both weekend training periods and two-week-long training periods. (Doc. 27-3 at 30.) Plaintiff provided Ms. Smith with a screenshot of his schedule, including the dates on which he would have to take leave. (Doc. 28 at 1; Doc. 27-2.) Ms. Smith informed Plaintiff that Bedford County would work with his National Guard schedule. (Doc. 27-3 at 27.) For the first ninety days of his employment, he was a probationary employee, which meant Ms. Smith had the right to terminate him without disciplinary action or coaching sessions. (Doc. 28 at 2.)

One of Plaintiff's two-week training periods began on June 15, 2023. (Doc. 27-2 at 1.) The next day, on June 16, 2023, Ms. Smith sent an email to Human Resources ("HR") representative Shanna Boyette, stating that "[her] last hire, Skylar Wamsley, isn't going to work out," and asking to keep his job posting up "until [she] can work out his release from work." (Doc. 27-4 at 2.) Plaintiff was not terminated at this point.

On June 29, 2023, while on training leave, Plaintiff texted Ms. Smith to inform her that he fell six feet onto his back and was rushed to the emergency room during his training. (Doc. 27-6 at 2.) Plaintiff told Ms. Smith he had been released from training for the past three days and had physical therapy scheduled for one-and-a-half weeks later. (*Id.* at 2.) Ms. Smith told Plaintiff that she would notify HR and told him to touch base with her in a few days. (*Id.* at 3.) On July 4, 2023, Ms. Smith informed Plaintiff that Bedford County would need a doctor's note clearing him before he came back to work. (*Id.* at 4.) Plaintiff responded that he had an upcoming follow-

up appointment, then he asked if he would get paid while he was out.  (*Id.* at 4–5.)  Ms. Smith responded that he would not get paid because he did not have any leave built up.  (*Id.* at 5.)   On July 7, 2023, Ms. Smith informed Plaintiff that his services were no longer needed and she would be sending him a separation notice.  (*Id.* at 5.)   Defendant asserts his termination was "based on his workplace conduct and temperament," which included threatening detainees, eating detainees' food, and visiting his girlfriend during shifts.  (Doc. 24 at 13.)  Plaintiff argues it was because of his military status.

This case is set for trial May 11, 2026.

## II.   <u>STANDARD OF REVIEW</u>

A motion in limine is "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "Orders in limine which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).   "A better practice is to deal with questions of admissibility of evidence as they arise."  *Id.*   Courts have power to exclude evidence through a motion in limine only when evidence is "clearly inadmissible on all potential grounds."  *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Motions in limine "are not proper procedural devices for the wholesale disposition of theories or defenses."  *Bell v. Prefix, Inc.*, No. 05-74311, 2009 U.S. Dist. LEXIS 101889 at *3 (E.D. Mich. Nov. 2, 2009).   "A court enjoys broad discretion when it decides questions of relevance and possible prejudice."  *Clark v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:17-CV-00419-GNS-CHL, 2025 U.S. Dist. LEXIS 259653, at *4 (W.D. Ky. Dec. 16, 2025).

## III.    <u>**DISCUSSION**</u>

Plaintiff moves to exclude seven pieces of evidence or categories of evidence.  The Court will address each piece of evidence or category of evidence in turn.

### A.    **Evidence of Plaintiff's prior employment discipline and terminations**

Plaintiff argues that evidence regarding prior discipline, write-ups, or terminations from prior employers is inadmissible under Federal Rule of Evidence 404(b). "Evidence of [a] crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  But evidence of prior bad acts may be admissible for non-character purposes.  Under Rule 404(b)(2), prior bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Both parties agree "it is appropriate to prohibit this evidence from being offered to prove that Mr. Wamsley was a bad employee."  (Doc. 32 at 2.)  But Defendant argues that "it is premature to exclude this evidence should it become relevant for a permissible purpose under the Rules."

To determine whether Rule 404(b) evidence is admissible, the Court of Appeals uses a three-part test.

> Before the court may admit [Rule] 404(b) evidence, it must: (1) determine whether this is sufficient evidence that the prior acts occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in the rule; and (3) apply Rule 403 balancing to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

*Eldridge v. City of Warren*, 655 F. App'x 345, 348 (6th Cir. 2016) (alteration in original) (quoting *United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011)).  The Court of Appeals "requir[es] the proponent to identify the specific purpose for which the evidence is offered."  *United States v.*

*Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996). This requirement does not "mandate hypertechnicality" and recognizes that "whether 404(b) evidence is admissible for a particular purpose will sometimes be unclear until late in the trial." *Id.* Notwithstanding this observation, "[a] party may not simply recite a 'laundry list' of possible purposes, but instead must clearly specify the permissible purposes of the proffered evidence." *United States v. Busch*, No. 3:18-cr-079, 2019 U.S. Dist. LEXIS 95752, at *3 (S.D. Ohio June 7, 2019) (quoting *United States v. Brown*, 90 F. Supp. 2d 841, 844 (E.D. Mich. 2000)).

Here, Defendant has not offered any evidence as to whether the prior events happened nor has it identified the specific purpose for which the evidence will be offered. Indeed, Defendant merely states that "it is premature to exclude this evidence should it become relevant for a permissible purpose." (Doc. 32 at 2.) It argues that evidence about these prior terminations "may" be properly admitted during trial under any of the 404(b)(2) purposes without citing any *specific* purpose. And the Court cannot identify a potential proper purpose for this evidence except the impermissible use of establishing a propensity toward bad behavior at work.[1] A listing of all permissible purposes under Rule 404(b) is not a sufficient showing that such evidence is admissible. Therefore, the Court will **GRANT** Plaintiff's motion in limine and exclude evidence

---

[1] Of course, the Court reminds the parties that "motions *in limine* yield only interlocutory decisions". *Cooey v. Strickland*, No. 2:04-cv-1156, No. 2:09-cv-242, No. 2:09-cv-823, No. 2:10-cv-27, 2011 U.S. Dist. LEXIS 8336, at *10 (S.D. Ohio Jan. 28, 2011). "The Court may reconsider the admissibility of the evidence … and even change its ruling on a motion *in limine* 'as the proceedings give context to the pretrial objections.'" *Henricks v. Pickaway Corr. Inst.*, No. 2:08-CV-580, 2016 U.S. Dist. LEXIS 113001 (S.D. Ohio Aug. 24, 2016) (quoting *Bennett v. Bd. of Educ. Of Washington Cnty. Joint Vocational Sch. Dist.*, C2-08-CV-0663, 2011 U.S. Dist. LEXIS 116412, at *1 (S.D. Ohio Oct. 7, 2011).

of Plaintiff's history of disciplinary issues and terminations from prior employment to show propensity.

## B. Sexual harassment allegations

Plaintiff moves to exclude "any of his deposition testimony regarding alleged sexual[-] harassment accusations while employed at Archangel" and any related documentation in reference to these allegations under Federal Rules of Evidence 401 and 403. (Doc. 30 at 2.) Defendant acknowledges that because the allegations occurred after Plaintiff's employment with Bedford County ended, "they are irrelevant to Bedford County's decision to terminate Mr. Wamsley." (Doc. 32 at 2.) However, it argues that such evidence may be relevant for other reasons, such as for impeachment purposes and for backpay calculation. Specifically, it argues "the fact that Mr. Wamsley was terminated for cause is relevant to whether his backpay should be tolled." (*Id.*)

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The Federal Rules of Evidence set a low bar for relevance." *Cambio Health Sols., LLC v. Reardon*, 234 F. App'x 331, 338 (6th Cir. 2007). "A piece of evidence does not need to carry a party's evidentiary burden in order to be relevant; it simply has to advance the ball." *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009). But the Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice" or "misleading the jury." Fed. R. Evid. 403. Defendant agrees this evidence is not relevant to its decision to terminate Mr. Wamsley. (Doc. 32 at 2.) The Court will address the other two grounds Defendant proffered for admissibility: impeachment evidence and backpay.

6

Defendant invokes Rule 613.  (Doc. 32 at 2.)  The Court does not see a reason for this evidence to be offered for impeachment purposes under Rule 613. "Extrinsic evidence of a prior inconsistent statement is admissible pursuant to FRE 613(b)."  *Nissan v. State Farm Fire & Cas. Co.*, No. 11-cv-13047, 2013 U.S. Dist. LEXIS 117424, at *5–6 (E.D. Mich. Aug. 20, 2013). It is unclear how allegations of sexual-harassment could even constitute extrinsic evidence of any prior inconsistent statement by Plaintiff on a relevant matter.  The allegations refer to conduct that occurred after the termination.  Any inquiry into Plaintiff's character after the termination would be irrelevant to the issues in this case, because such evidence would not be relevant to the termination decision.  Therefore, the Court does not see a reason for this type of impeachment evidence to be offered to impeach irrelevant statements by Plaintiff.  *See Bowman v. Vankeuren*, No. 21-cv-12845, 2025 U.S. Dist. LEXIS 218152, at *5 (E.D. Mich. Nov. 5, 2025) ("[T]he Court does not see an opening for [evidence of prior convictions and a prior incarceration] to be offered by Defendants even for impeachment purposes.")

Defendant also invokes Rule 608(b).  "Fed. R. Evid. 608(b)(1) allows a witness's credibility to be attacked on cross-examination with specific instances of misconduct relevant to credibility."  *Clark v. Louisville-Jefferson Cnty. Metro Gov't*, 2026 U.S. Dist. LEXIS 652, at *6 (W.D. Ky. Jan. 5, 2026).  This applies to misconduct that involves an element of truthfulness, like forgery.  *See Steeg v. Vilsack*, No. 5:13-cv-00086-TBR, 2016 U.S. Dist. LEXIS 149491, at *9 (W.D. Ky. Oct. 27, 2016) (allowing Defendant to inquire into forged document because it is conduct relevant to credibility).  The Court does not find that sexual harassment is misconduct relevant to credibility.

Defendant also argues that this evidence is relevant to backpay calculations.  The Court agrees that the backpay calculation may be affected by whether the later termination was "for cause."  But evidence of the specifics behind the termination is not relevant to a backpay calculation.  Whether Plaintiff is entitled to backpay is not dependent on the reason for the termination, but rather whether there *was or was not* a reason for termination (i.e. whether it was "for cause").  Evidence that the termination was for sexual harassment is more likely to inflame the passions of the jury without bringing any probative value to this inquiry.  Fed. R. Evid. 403.  Therefore, the Court will **GRANT** Plaintiff's motion as to evidence of sexual harassment at work after his employment with Bedford County.

      C.        **Testimony regarding Plaintiff's fiancée's presence at work during his employment at the Tennessee Highway Patrol or any other employers**

Plaintiff moves to exclude "any testimony regarding Plaintiff's fiancée[']s presence at work during Plaintiff's employment with Tennessee Highway Patrol, or any other employers, should Defendant move to admit any further such evidence" under Federal Rule of Evidence 404.  (Doc. 30 at 2.)  *See supra* IIIA.

Defendant again argues that "the County might use this evidence for one or more of the permitted uses provided by subsection (b)(2)."  (Doc. 32 at 3.)  But this falls short of the requirement that the proponent "identify the specific purpose for which the evidence is offered."  *Merriweather*, 78 F.3d 1076.  And again, the Court cannot identify any specific purposes under Rule 404(b)(2) which may make this evidence admissible.  "A laundry list of the enumerated 404(b) uses … is insufficient to demonstrate that the evidence has a proper purpose."  *Busch*, 2019 U.S. Dist. LEXIS 95752, at *3 (quoting *United States v. Xavier,* 1:08-CR-00018, 2010 U.S. Dist. LEXIS 26409, at *3 (D.V.I. Mar. 17, 2010)).  The Court finds such evidence

8

clearly inadmissible under Rule 404, and therefore will **GRANT** Plaintiff's motion in limine as to "any testimony regarding Plaintiff's fiancée[']s presence at work during Plaintiff's employment with Tennessee Highway Patrol, or any other employers, should Defendant move to admit any further such evidence." (Doc. 30 at 2.)

### D. Attendance, drill absences, and excused absences

Plaintiff seeks to exclude evidence "regarding reasons he gave for missing drill or being excused from attending drill." (Doc. 30 at 3.) The Court understands "drill" to refer to the entire period of training and instruction. 32 U.S.C. § 502(a)(1) (referring to "drill and instruction"); *Drill*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/drill (last visited May 6, 2026). While Plaintiff does not cite a rule of evidence, he argues such evidence would "only serve to confuse the jury" and later that it "has no bearing on his claims in this case." (*Id.* at 4.) Therefore, the Court addresses this objection under Federal Rules of Evidence 401 and 403. *See supra* IIIB.

Plaintiff "concede[s] that attendance at drill and, particularly, the injury Plaintiff suffered that led to his termination, are in dispute, and require Plaintiff's testimony and other supporting documentation." (Doc. 39 at 3.) But Plaintiff argues that the reason for missing drill is inadmissible, and evidence from periods when he was not employed by Bedford County is inadmissible. (*Id.*)

Some of this evidence is not clearly inadmissible. Whether Plaintiff missed drill in the summer of 2023 would be relevant to whether he experienced an injury during his training, which is a contested issue in this case. It would also be relevant to prove his presence at training. Therefore, testimony about missing drill while he was employed at Bedford County is not clearly

9

inadmissible. But the Court does agree that evidence about Plaintiff missing drill outside of his employment with Bedford County (*see, e.g.* Doc. 31 at 49–52) is clearly inadmissible because it is not relevant to whether Plaintiff was present at drill during the relevant time or experienced an injury that tolled the convalescence period under 38 U.S.C. § 4312(e). The contested issue is Plaintiff's presence and injury at his National Guard training in June 2023 while he was employed by Bedford County; other periods where he was employed by a different employer and may have skipped drill make no fact in this case more or less likely and introduce a substantial likelihood of unfair prejudice.

Therefore, the Court will **DENY** Plaintiff's motion as to evidence of attendance at drill and excused absences during his June 2023 training and will **GRANT** Plaintiff's motion as to evidence of attendance at drill and excused absences as to periods in which he was not employed by Bedford County.

### E. Testimony regarding Plaintiff's employment with Allied Universal

Plaintiff moves "to exclude detailed testimony regarding employment with Allied Universal, including the fact that he only worked for them for three days, and that he quit working for them over contract disputes." (Doc. 30 at 3.) Plaintiff argues this evidence is irrelevant and risks confusion. (*Id.*) Defendant argues that this evidence is relevant to show inconsistencies in Plaintiff's testimony because Plaintiff stated he was assigned to work at locations where Allied lost contracts, but records demonstrate Plaintiff resigned in order to work at GardaWorld. (Doc. 32 at 4.) Defendant also argues this evidence is relevant because it shows Plaintiff withdrew from gainful employment for an extended period of time, and therefore Defendant should not be responsible for paying back pay. (*Id.*) Plaintiff states that he "is willing to stipulate to Plaintiff's

10

applications to Allied Universal, and his reasons for leaving his employment there. Plaintiff maintains objections to any other documentation from Allied Universal that may have been produced." (Doc. 39 at 4.)

While the Court does not find this evidence clearly inadmissible, the Court finds the relevance of such evidence depends on the theories and evidence offered at trial. Fed. R. Evid. 104(b). Defendant has provided the Court with a scenario under which such evidence could be used for impeachment purposes under Federal Rule of Evidence 613. And this evidence could also be relevant to a backpay calculation if Plaintiff did, in fact, deny gainful employment. But such issues may not even arise at trial. The Court finds, then, that such relevance will depend on the evidence offered at trial and the theories of each party. Therefore, the Court will **RESERVE RULING** on Plaintiff's motion in limine as to testimony about Plaintiff's Allied Universal employment.

### F. Lay opinions and legal conclusions

Plaintiff moves to exclude "anywhere where Plaintiff testified to matters that called for legal conclusions or to make claims about the ultimate issue in the case." (Doc. 30 at 3.) Plaintiff moves to exclude this evidence under Federal Rules of Evidence 701, 702, and 403. Plaintiff argues that conclusions and questions in Plaintiff's deposition about his legal claims "leave room for further interpretation of the fullness of Plaintiff's claims as alleged in the complaint." (Doc. 30 at 4.) And furthermore, Plaintiff argues that these opinions constitute legal conclusions inadmissible under Rules 701 and 702. (*Id.*)

Under Federal Rule of Evidence 701, lay witness testimony is limited to testimony "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's

11

testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Under Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

And such opinion testimony either under Rule 701 or 702 may be excluded if the risk of unfair prejudice or confusion substantially outweighs the probative value of such testimony. Fed. R. Evid. 403.

The Court does not find this evidence clearly inadmissible. First, as to Plaintiff's contention that Plaintiff's deposition testimony about his claims "leave[s] room for further interpretation of the fullness of Plaintiff's claims as alleged in the complaint," this is easily explored on direct examination or re-direct examination. Any risk of confusion is slight, and the probative value of Plaintiff's assessment of his own claims is high. And as to legal conclusions, the Court finds that because these are statements about the claims Plaintiff himself brought, it would be rationally in Plaintiff's perception to state his understanding of the claims that he chose to bring. *See Gillespie v. City of Miami Twp.*, No. 3:13-cv-416, 2022 U.S. Dist. LEXIS 186178, at \*6 (S.D. Ohio Oct. 11, 2022) (stating that "Rule 701 establishes limitations on opinion testimony by lay witnesses but does not exclude it outright"). The Court agrees that "Mr. Wamsley cannot simultaneously assert claims against the County and prevent the jury from hearing his own sworn

description of the basis for those claims." (Doc. 32 at 4–5.)  Plaintiff's vantage point as the person who brought these claims suggests that his characterization of them and his injuries would be admissible as a proper lay opinion.   Therefore, the Court will **DENY** Plaintiff's motion as to testimony about his own legal claims.

### G.     Tax issues

Plaintiff "moves to exclude testimony regarding his issues with filing taxes in a timely manner" under Federal Rules of Evidence 401 and 403.  *See supra* IIIB. Defendant argues "Mr. Wamsley's failure to file tax returns bears directly on the reliability, accuracy, and completeness of his claimed lost wages and earnings history as well as his credibility." (Doc. 32 at 5.)   And Plaintiff argues, "Plaintiff's existent tax records and other financial records can be presented to the jury, without any need for letting the jury know Plaintiff failed to file his taxes on time." (Doc. 39 at 5.)

The timeliness of Plaintiff's filing does not appear to be relevant to the amount of damages or backpay to which he claims he is entitled, so long as the return was eventually filed correctly and the amount listed on his records was accurate.  The Court does not see, and Defendant does not demonstrate, how such a failure to timely-file taxes bears on the reliability of those returns or Plaintiff's credibility.   And such evidence introduces a substantial risk of unfair prejudice. Therefore, the Court will **GRANT** Plaintiff's motion in limine to exclude testimony about his failure to file taxes on time.

## IV.    <u>CONCLUSION</u>

The Court will **GRANT IN PART, DENY IN PART,** and **RESERVE RULING IN PART** on Plaintiff's motion in limine (Doc. 30).  The Court will **GRANT** the motion in limine as

to evidence of Plaintiff's prior employment discipline and terminations (*id.* at 1), evidence of sexual-harassment allegations (*id.* at 2), testimony regarding Plaintiff's fiancée's presence at work during his employment at the Tennessee Highway Patrol or any other employers (*id.*), and testimony regarding Plaintiff's late-filed tax returns (*id.* at 4).  The Court will **GRANT IN PART** the motion in limine as to evidence of attendance at drill and excused absences during periods in which he was not employed by Bedford County, and the Court will **DENY IN PART** Plaintiff's motion as to evidence of attendance at drill and excused absences during his June 2023 training (*id.* at 3).  The Court will **DENY** Plaintiff's motion in limine as to his own opinion about his legal claims (*id.*).  And the Court will **RESERVE RULING** on Plaintiff's motion regarding testimony about his employment at Allied Universal Employment (*id.*).

**AN APPROPRIATE ORDER WILL ENTER.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

14